RAYMOND STRAUSS, PETITIONER-RESPONDENT, v. WRIGHT AERONAUTICAL CORPORATION, RESPONDENT-PROSECUTOR.

Submitted January 22, 1947—Decided April 3, 1947.

Before Justices BODINE and WACHENFELD.

For the respondent-prosecutor, *John W. Taylor.*

For the petitioner-respondent, *Hein & Smith (Seymour A. Smith, of counsel).*

The opinion of the court was delivered by

WACHENFELD, J.   This case presents a claim for compensation benefits within the provisions of *R. S.* 34:15–12 (x) for what is commonly known as a five-point hernia as distinguished from a traumatic hernia.   The Bureau granted an award to the respondent after a finding of an inguinal hernia and the same was approved by the Bergen County Court of Common Pleas.

On November 16th, 1944, at about eleven-fifteen A. M., while going about his duties with the prosecutor as an engine inspector, respondent slipped on some oil on the floor, lost his balance, and in doing so, doubled up and just saved himself from falling to the ground, twisting in the motion of the fall.   Just after this occurred he felt a terrific pain in the left groin which he described "as if my guts opened up."   He could not continue working and had to sit down.   At about eleven-forty-five his foreman came in, found him at that time as white as a sheet and ordered the man to go to the company

hospital immediately. There a company physician applied a heat lamp to his groin and advised further hot applications. That physician did not testify but the company hospital record showed he found tenderness in the left inguinal region which he diagnosed as possible myositis.

When respondent reported back to the foreman about one-half hour later, he was unable to continue doing his former work; hence, the foreman transferred him to the "crib," which simply meant checking little nuts and bolts and packing them in envelopes. At that time respondent did not notice any lump but did feel a slight swelling in the area of the groin where the pain centered. He returned to the company hospital periodically, receiving lamp treatment, and finally another doctor of the company on December 11th, 1944, diagnosed the ailment as a rupture or hernia and advised a water cushion truss. Upon being told of the hernia respondent walked over to the company physician who had been treating him since the accident and said, "Doctor, I got a hernia," but the doctor would not listen and walked away.

The respondent had been employed for several years and had enjoyed perfect health except for an injury to the center of the back a few years before the date of this accident, but had never had any trouble with his groin and had never had any hernia heretofore. Since the accident he has been unable to do any arduous or heavy work or any work requiring lifting or bending.

These facts were testified by the respondent and the circumstances following the accident verified by his foreman. Medical experts testifying for both sides agreed in diagnosing the respondent's disability as an indirect left inguinal hernia. A signed statement by respondent on December 11th, 1944, to the insurance company's investigator was introduced, in which he set forth the facts as above stated except as follows:

"It didn't feel like a pain at first but about an hour later I noticed a bad pain in my left groin. I told my leadman Mr. Frogtog and my foreman Mr. Hoigt about 12 P. M. about the pain in my left groin. I reported to the hospital when the pain in my side became acute. After I had slipped I did

not stop working for a minute and continued working for about an hour when 1 first noticed a bad pain. I did not feel a lump in my left groin and I haven't seen or felt a lump up to to-day."

A doctor who examined the respondent more than a year after the accident testified that the respondent in giving a history of the accident said, "At the time he did not think much about it [the accident] until he was having lunch, which he states was about a half hour later * * *."

Under *R. S.* 34:15–12 (x) a non-traumatic hernia is not compensable unless it is established that "the hernia was immediately caused by such sudden effort or severe strain that, first, the descent of the hernia immediately followed the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employee was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within twenty-four hours after the occurrence of the hernia * * *; fifth, that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia."

The statute at the time of the alleged accident required "conclusive proof" of those five points but section 5, chapter 74, *Pamph. L.* 1945, substituted the standard of "preponderant proof." However, section 20 of the same amendatory law expressly provides that the amendment shall apply to accidents occurring after January 1st, 1946, thereby excluding the instant case.

The words "conclusive proof" have already been construed by this court. While under that standard it has been held the legislature did not intend to allow an award except in a "perfectly clear case," *Essex Chair Co.* v. *Freedman,* 134 *N. J. L.* 302, it was not intended to establish a harsh and inflexible standard which a petitioner would find almost impossible to meet. The phrase is to be construed to mean "such proof that the fact finder, after hearing the testimony in support of the claim and contrasting and weighing it with

that produced to rebut it, is clearly of the view that the claim has been *sustained by evidence that is convincing in character.*" (Italics added.) "\* \* \* the qualifying word 'conclusive,' as used in the statute \* \* \* is not to be regarded in a sense that imports to it a quality that will not tolerate challenge or contradiction; but rather in its ordinary sense that the proof is convincing and such that it justifies a conclusion that the statutory requirements of such case were proved." *DiMieri* v. *Metafield, Inc.,* 126 *N. J. L.* 484, 487; *affirmed,* 127 *Id.* 597.

It is undisputed that the respondent has adequately proven the prerequisites of notice to the employer and the attendance of a licensed physician within the statutory periods. As to the three remaining conditions, we make an independent determination pursuant to *R. S.* 2:81–8 and *R. S.* 34:15–66 that the respondent has maintained the statutory burden.

Immediate severe pain in the hernial region was described by the respondent. His foreman, who appeared one-half hour after the accident, recognizing the condition, directed him to the company hospital. The medical report of the company physician who treated the disability noted a tenderness in the pained area.

Similarly, prostration causing immediate cessation of work has been adequately established. It is true that respondent did not lose any time from his work, but upon return from the company hospital about an hour after the original strain he complained of his inability to carry out his former duties and was immediately assigned to light work. Such proof is sufficient to maintain the statutory requirement. *Frank A. McBride Co.* v. *Kuehn,* 11 *N. J. Mis. R.* 764.

In regard to the proof of "immediate descent," the term was interpreted in *Borodaeff* v. *Province Line Dairy, Inc.,* 109 *N. J. L.* 25, 27, where this court said:

"We think that the phrase 'immediately followed the cause' should be held to mean 'soon enough and in such manner as to make it appear clear that the descent was the effect of the strain and pain complained of which forced cessation of work.' "

Examination of the evidence amply justifies the conclusion that the descent was immediate. All expert medical witnesses who made physical examinations agree that the respondent is presently suffering from an inguinal hernia. A medical witness testifying for the respondent gave the opinion, based on a hypothetical question as well as a personal physical examination, that the descent was immediate in view of the pale appearance, severe pain and subsequent swelling.

The evidence adduced by the prosecutor does not justify a contrary finding. The testimony of a medical expert who diagnosed the condition three weeks after the accident does not support prosecutor's position since that witness did not place the time of descent but merely testified to a physical condition which he found at the time of examination.

The hospital record wherein the first attending physician diagnosed the disability as a possible muscular inflammation cannot be given much weight for, assuming its admissibility, this court cannot overlook the failure of the prosecutor to explain the absence of that doctor who, while employed by the company, administered treatment immediately after the accident and therefore could best establish the absence of immediate descent, if such be the fact.

The remaining medical witness testifying on behalf of the prosecutor denied any causal connection between the strain and the hernia because the respondent continued to work and was not completely collapsed. That conclusion is not justified since it is clear that hernia with rest may be reduced immediately after occurrence, thereby lessening its effect. In fact, at no time did the respondent suffer collapse as that witness would require and yet there is no disagreement as to a present condition of hernia.

The statement given to an investigator wherein respondent immediately after he was informed of the hernial condition denied the appearance of a "lump" is neutralized by the prosecutor's own medical witness who on the same day had found a substantial swelling in the hernial area. The explanation given by the respondent at the trial that he misunderstood what the investigator meant is therefore plausible. The evi-

dence submitted by the prosecutor to establish the absence of immediate pain does not adequately rebut the impartial testimony of the company foreman.

Judgment affirmed, with costs.