Action by John Wesley Ayers against Marvin Morgan for injuries received in an automobile accident. Judgment for defendant and plaintiff appeals.
Affirmed.
The appellant failed in his effort to recover damages for injuries claimed to have been received when the automobile driven by the appellee, in which he was riding as appellee's guest, overturned. To prevail, it was incumbent on the plaintiff to prove that the "accident" was caused by the "gross negligence or willful and wanton misconduct" of his host. Section 320.59, Florida Statutes 1941 and F.S.A. As a basis for the evidence he had alleged in his declaration that the defendant was guilty of gross negligence when he operated the car "at a speed of not less than 50 miles an hour" on a "bumpy and wavy" road sixteen feet wide and "almost flat" at a point where it "curved sharply to the right at an angle of approximately 90 degrees * * *." He supplemented these charges by averring that the defendant failed to apply his brakes and reduce the velocity of the car to a reasonable rate as he entered the curve and abruptly and violently jerked the steering wheel backward and forward so that the vehicle careened after leaving the curve, turned sideways on the road, and rolled over.
We shall not tarry to discuss the propriety of the court's order overruling the demurrer to the declaration, but shall proceed immediately to the evidence to determine whether, assuming that a case was well stated in the declaration, the jury properly found a verdict of not guilty on evidence which they chose to believe.
Four boys on a pleasure excursion were driving along a paved road about 1:30 o'clock in the morning. Parenthetically, the record is silent about any unusual weather conditions or the presence of any other vehicles as they rounded a curve described by at least one of plaintiff's witnesses as "gradual." The car swerved to the left, whereupon the driver turned it to the right, and then it rolled over two and one-half times. The appellant was asleep; so he knew nothing of the occurrence until he awoke and found that he had been injured, and the driver did not testify.
The exact nature of the curve, averred to have been a sharp one of about ninety degrees described by a roadbed sixteen feet wide, may be better understood by a study of the testimony of a civil engineer — he was apparently disinterested and his qualifications were admitted — and from the plat he prepared. The pavement was sixteen feet and three inches wide at the point where the car in question entered the curve. It widened to twenty feet at the center of the arc and narrowed to sixteen and one-half feet where the road became straight again. For practical purposes the last sixty feet of the roadway on the curve was much wider than that because of its juncture on the outside of the curve with a dirt road, affording added space in which a car could be maneuvered. The distance between the beginning and the end of the curve was approximately two hundred forty feet. The engineer said that it was a curve of twenty-four degrees and that the course of the road in this distance of two hundred forty feet changed approximately sixty degrees. So the jury had a perfect right to believe and, in truth, were convinced that instead of being a sharp right angled curve on a roadbed sixteen feet wide, the curve was gradual on a pavement widening to twenty feet at the center of the arc, and that the last sixty feet on the outside of the curve on the left hand of the driver of the car was, for the use of maneuvering the vehicle, considerably broader.
The two passengers of the car who were the only witnesses of the accident to testify stated in effect that when the car swerved as the curve was entered, the driver "yanked" it to the right. Then one of these admitted that this was a conclusion he had reached when considering the matter later, but that he was not sure exactly what happened. As for the testimony of these two boys about the condition of the pavement, *Page 4 
which was charged in the declaration as having been "bumpy and wavy," one remembered no "bumps" or "waves," while the other said that it was "cracked and bumpy." From the photographs filed in evidence by the plaintiff, the surface of the road does not appear to have been so broken or uneven as to have affected materially the safe operation of the car. When one of these witnesses was asked whether the driver slowed down as he approached the curve, his reply was that he did.
On the matter of speed, it was stated by one witness that the car was traveling from forty-five to fifty-five miles an hour, while the other, when asked how fast they were traveling, said, "I'd say maybe about 50 miles an hour, I guess," and later admitted that he did not know. To cap their uncertain stories one of them said that he thought the appellee was driving "sane," while the other testified that he had felt no fear for his own safety.
We do not wonder that when the jury had considered this testimony they came to the conclusion that the plaintiff had failed to establish that his injuries resulted from the gross negligence or wilful and wanton misconduct of the appellee. This is our answer to appellant's first and, we think, principal question.
The appellant complains about the use by the Judge of the word "conclusively" in his instructions to the jury because, he says, a plaintiff required to prove conclusively an essential element of his case, in this instance gross negligence, must assume a burden altogether too heavy. It is a fact that this adverb was employed, but so were the jury told that it was incumbent on the plaintiff to prove all the material facts of his declaration by a preponderance of the evidence. After studying the charges as a whole, we are unable to attach to the one word the significance the appellant claims for it. The court probably found authority for the use of the word "conclusively" in O'Reilly v. Sattler,141 Fla. 770, 193 So. 817, 818, a case also involving the "guest statute," where we remarked that "no proof [had been found] in the record that [afforded] any conclusive clue or presumption as to how the accident took place."
There are many synonyms of the word "conclusive," and in the context of the instructions we think the appropriate one is "convincing," rather than "unanswerable," and when given this connotation it does not seem so to clash with the familiar expression "preponderance of the evidence," also appearing in the charges, as to eclipse the signification of the latter. See Strauss v. Wright Aeronautical Corporation, 135 N.J.L. 371,52 A.2d 412.
We have examined the other questions posed by the appellant, as well as those presented by the appellee, but we see no need to discuss or decide them.
Affirmed.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.